106

UNITED STATES v. E. W. J. HEARTY, INC. (No. 4436)[1]

United States Court of Customs and Patent Appeals, November 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.
*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for appellee.

[Oral argument October 6, 1943, by Mr. Donohue and Mr. Frederick W. Brooks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellee imported at the port of New York, in 1938, certain tins of chicken breasts, each of which tins contained 10 ounces of meat and 6 ounces of a gelatinous substance known as "zalivka." The zalivka is composed of water, salt, caramel or burnt sugar, and agar-agar. The agar-agar is used so that the chicken breasts may rest in the gelatinous substance and thus prevent movement in the tin. The caramel is used for coloring purposes.

The importations were from Poland, where the chickens were cleaned, the heads and legs cut off, and cooked in boiling water for a period of from 5 minutes to an hour and 5 minutes depending on the age and size of the chickens, an average cooking being 20 minutes. The breasts were cut off and packed in the tins and covered with the

[1] C. A. D. 257.

zalivka, after which the tins were sealed and sterilized by cooking from 50 minutes to an hour. If the containers were to be shipped to a warm climate, they were sterilized for more than an hour in order that all portions of the breasts would receive the sterilizing treatment. The liquid in which the chicken is first cooked is frequently used for more than one cooking, and the natural broth and fat which exudes from the chicken during the first cooking is separately packed and sold for export to England and also in Poland as a separate commodity.

The sole question involved is whether or not the jelly substance surrounding the chicken meat is dutiable as assessed at 10 cents per pound as "Chickens .* * * prepared or preserved * * *."

The collector levied duty at 10 cents per pound on the entire 1-pound content of the tins, under paragraph 712 of the Tariff Act of 1930, which reads as follows:

Par. 712. Birds, dead, dressed or undressed, fresh, chilled, or frozen: Chickens, ducks, geese, and guineas, 10 cents per pound; turkeys, 10 cents per pound; all other, 10 cents per pound; all the foregoing, prepared or preserved in any manner and not specially provided for, 10. cents per pound.

The importer protested the taking of any duty on the said 6 ounces of broth and agar-agar.

The United States Customs Court, Third Division, in its decision sustaining the protests, carefully analyzed the testimony of all the witnesses and then held as follows:

The weight of the evidence before us overwhelmingly supports plaintiff's contention that the 6 ounces of broth and agar contained in each can of chicken breasts is merely a packing material which in commercial practice is discarded upon opening the container; that it is not, in fact, chicken broth, and suitable for use as such, or for any other use.

From the judgment of the trial court, the United States has here appealed.

The importer introduced the testimony of seven witnesses, as also did the Government. Since we are of the opinion that the trial court carefully and properly weighed the evidence and arrived at the right conclusion, we deem it wholly unnecessary to detail here all the testimony adduced. It is sufficient to say that the seven witnesses who testified for the importer were, for the most part, users of the product and that their testimony, abundantly supports the conclusion of the trial court that the 6 ounces of broth and agar-agar contained in each tin is of no commercial value and that in practice it is discarded upon opening the container. The mere, fact that some of the juices remaining in the chicken after the first cooking may have exuded from the chicken during the second cooking and become mixed with the agar-agar does not necessarily mean that the gelatinous matter has the broth character which would make it of commercial value in this country.

Some of the witnesses stated that the gelatinous material could not be "stepped up" or made usable by the addition of other ingredients, although frequent efforts had been made to accomplish this purpose. It was shown in the testimony that sales of this merchandise were prevented on certain occasions by reason of the fact that 6 ounces of each 1-pound container could not be utilized in a profitable way.

The Government's witnesses consisted of some chefs who, for the most part, had never used imported canned chicken, but used domestically produced fresh chicken, from which a broth was made, or domestically produced canned chicken. The latter was shown to be used infrequently. There is some testimony for the Government to the effect that the gelatinous content of the can could be utilized by "stepping it up," one witness making a demonstration that it could be made edible by the addition of cream, butter, flour, and sherry wine. The testimony as to the quality and character of this concoction after it was made is not convincing that the gelatinous material is very desirable as a broth or that it is commercially practicable to use it for any purpose.

The Government's witnesses, for the most part, seemed to regard the gelatinous substance as a broth which came from the chicken and to conclude that such a broth, when it came from the cooking of a chicken, was not only edible but highly desirable for use in making various dishes from the chicken meat. As found by the court below, this record as a whole is quite convincing, we think, that in using the imported chicken breasts for chicken salad, chicken pie, and other dishes, which seemed to be its main uses, it was not feasible or practicable to utilize the 6 ounces of gelatinous substance in any manner, and that no practicable use for it was known.

The Government has cited a number of decisions on this phase of the case, but there seems to be no dispute about the law, and therefore a discussion of the decisions is deemed unnecessary. The importer has not urged that the whole content of the can is not dutiable as assessed if the gelatinous material surrounding the meat is the broth from the chicken and is of commercial value.

The trial court heard the witnesses and carefully weighed the evidence, and we think that it arrived at the right conclusion. Certainly we are not convinced that the decision is clearly contrary to the weight of the evidence.

Under point III of its brief, the Government has sought to raise the question that if the material is not dutiable as an entirety, the two components are dutiable under appropriate provisions of law and that in such case the broth and agar-agar should be dutiable as an unenumerated manufactured article under paragraph 1558. The importer takes the position that this question was not raised

below, and there is nothing in the record to indicate that it was. However, under our view of the evidence, agreeable to the holding of the trial court, the content of the tins other than the chicken breasts was a packing material, and the question is controlled by such decisions as that of the Supreme Court of the United States in the case of *United States* v. *Aetna Explosives Co.*, 256 U. S. 402.

The judgment of the United States Customs Court is *affirmed*.